## PENNSYLVANIA CO. v. WHITE.

### (Circuit Court of Appeals, Sixth Circuit. June 5, 1917.)

### No. 2904.

1. RAILROADS ⊜351(18)—CROSSING ACCIDENTS—INSTRUCTIONS—EFFECT OF OPEN GATES.

An instruction that, when gates at a railway crossing are up, and the operator of the gates known to be present, they constitute an implied notice that no train is approaching, and that a traveler may safely cross, and therefore all the care that he is obliged to exercise is such care as men of ordinary prudence, approaching a railroad crossing, and seeing the gates up, and seeing the gateman at his post of duty, would customarily exercise under such conditions does not relieve such traveler from all duty to exercise care in his own behalf, but leaves it to the jury to determine whether he was guilty of contributory negligence, under all the circumstances, especially where paragraphs of the charge, immediately following, required plaintiff to use his powers of looking and listening as men of ordinary prudence, exercising ordinary care, would do.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1210.]

2. DAMAGES ⊜49—PERSONAL INJURIES—MENTAL SUFFERING.

In the case of a merely negligent omission of duty, not malicious or intentional, recovery cannot ordinarily be had for mental suffering, not connected with or accompanied by personal injury, or direct interference with plaintiff's person.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 100, 255.]

3. DAMAGES ⊜52—PERSONAL INJURIES—FRIGHT.

When defendant's negligence causes physical injuries to plaintiff's person, damages resulting from incidental fright may be recovered.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 100, 255.]

4. DAMAGES ⊜216(10)—INSTRUCTIONS—PERSONAL INJURIES—FRIGHT.

In an action for injury sustained in a crossing accident, the evidence showed, without dispute. that plaintiff was either thrown from the wagon in which he was riding by a collision, or jumped therefrom immediately before the collision, that he either alighted on his hands and knees, or on his feet and went down on his knees, that one of his hands was more or less bruised and cut, and that immediately following the fall, or after he had gone a short distance and lain down, he was assisted, weeping, into a factory near the crossing. Except for testimony that he said, after the accident, he was not hurt, it was also undisputed that for a time, at least. one of his knees was lame, and he was unable to do his usual, work. *Held*, that the refusal of an instruction that plaintiff was not entitled to damages for mere fright, and that for him to recover he must show some real and actual injury, aside from fright alone, was not error, as the jury would not have been justified in finding that plaintiff suffered no physical injury.

[Ed. Note.—For other cases, see Damages, Cent. Dig. § 555.]

5. DAMAGES ⊜52—PERSONAL INJURIES—FRIGHT.

Though plaintiff jumped from the wagon in which he was riding when a collision with a railway train was immediately impending, and his sole physical injury resulting from an attempt to escape from actual danger, damages were recoverable for impairment of his health, occasioned by the consequent fright.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 100, 255.]

⊜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

6. DAMAGES ⚷═52—PERSONAL INJURIES—FRIGHT.
     The rule permitting recovery for fright does not require that the direct physical injury be permanent or severe.
     [Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 100, 255.]

In Error to the District Court of the United States for the Northern District of Ohio; John H. Clarke, Judge.

Action by Otis S. White, guardian of Merle J. White, against the Pennsylvania Company. Judgment for plaintiff and defendant brings error. Affirmed.

W. L. Day, of Cleveland, Ohio, for plaintiff in error.
L. P. Metzger, of Salem, Ohio, for defendant in error.

Before KNAPPEN and DENISON, Circuit Judges, and SANFORD, District Judge.

KNAPPEN, Circuit Judge. Suit was brought on behalf of Merle J. White, whom we shall call plaintiff, to recover for injuries received under these circumstances: Plaintiff, who was about 19 years old, was driving a horse attached to a delivery wagon. As he approached defendant's tracks in Salem, Ohio, the gates on each side of the track were up, and White saw the watchman in his shanty near the gates. While he was driving across the tracks the gates were closed on each side, thus effectively hemming the horse, wagon, and driver between the gates. While in this predicament the wagon was struck by defendant's railway engine, the horse killed, and both the wagon and horse thrown a great distance. Plaintiff was either thrown by the impact of the engine with the wagon, or practically at the instant before the impact jumped, alighting on his hands and knees upon the brick pavement, 14 or 15 feet beyond the gate. Verdict and judgment were rendered for plaintiff. But two alleged errors are relied upon for reversal.

[1] 1. Defendant contended that the accident was due to plaintiff's negligence. In the course of the charge to the jury the trial judge used this language:

    "When guard gates at a street crossing are up, and the man to operate them is known to be present, they constitute an implied notice that no train is approaching and that the traveler may safely cross; and therefore all the care that he was obliged to exercise under these conditions was such care as men of ordinary prudence, approaching a railroad crossing, and seeing the gates up, and seeing the gateman, whose duty it was to lower them when trains approach, was at his post of duty, would customarily exercise under such conditions."

It is recognized by decisions of this court that the open gate is in the nature of or analogous to an invitation to the traveler to cross, but that it is still incumbent upon him to exercise his senses of sight and hearing for his protection as soon as, and as far as, a man of ordinary prudence would do under similar circumstances. Blount v. Gd. Trunk Ry. Co., 61 Fed. 375, 9 C. C. A. 526; Erie R. R. Co. v. Schultz, 183 Fed. 673, 675, 106 C. C. A. 23. The instruction in question is complained of as relieving the plaintiff from all duty to exercise care in his own behalf, and as placing the entire duty of care on defend-

ant. We are unable to accept this construction of the charge. We think it apparent, from even so much of it as we have quoted, that the court left to the jury the question whether, under all the circumstances, plaintiff was guilty of negligence contributing to the accident. Reference to other paragraphs of the charge immediately following the paragraph quoted relieves the question of all doubt.[1] There was no error in the instruction.

[2] 2. Defendant contends that there was evidence that plaintiff sustained no real injury aside from fright, and complains of the refusal of the following request to charge:

"I will say to you as a matter of law that the plaintiff is not entitled to recover damages for mere fright. In order for him to recover, he must show some real and actual injury, aside from fright alone."

It is the general rule that recovery cannot ordinarily be had in case of merely negligent omission of duty (that is to say, not malicious or intentional) for mental suffering not connected with or accompanied by physical injury or direct interference with the plaintiff's person, as illustrated by several cases relied on by defendant and cited in the margin.[2] In neither of these cases was plaintiff's person invaded.

[3] There is not wanting respectable authority that recovery may be had for injuries proximately occasioned by fright or shock due to defendant's actionable negligence, although not attended by direct physi-

---

[1] The paragraph of the charge above quoted was followed by these paragraphs:

"He was not authorized to shut his eyes or close his ears, so that he might not see or hear an approaching train, but he was obliged to use his powers of looking and listening as men of ordinary prudence, exercising ordinary care, would exercise them in looking and listening for trains, under such conditions as were before him, with the gates up and the gateman at his post.

"If you find from a preponderance of the evidence that the conduct of Merle White in looking and listening, or in failing to look and listen, for approaching trains, was such as men of ordinary prudence would have exercised, when approaching a railroad track and seeing the gates up and the gateman at his post of duty, then he was not guilty of contributory negligence in this case, and the plaintiff, his father, would be entitled to recover for such damages as his son suffered in the accident.

"But if you find that a man of ordinary prudence under these conditions, with confessedly an unobstructed view of the railroad tracks for a considerable distance in the direction from which the train came, would, notwithstanding the fact that the gates were up and the gateman at his post, have seen or heard the approaching train in time to have avoided injury, then there can be no recovery in this case, and your verdict should be in favor of the defendant, the railroad company."

[2] Rowan v. Western Union Telegraph Co. (C. C.) 149 Fed. 550, denying liability for mental anguish occasioned by negligent failure of the telegraph company to deliver a death message, by reason of which plaintiff was prevented from attending his sister's funeral; Kyle v. Chicago, R. I. & P. Ry. Co., 182 Fed. 613, 105 C. C. A. 151, denying a right of recovery for mental anguish due to the inability of plaintiff, through the carrier's negligence, to reach the bedside of a relative before death; Tiller v. St. Louis & San Francisco R. R. Co. (C. C.) 189 Fed. 994, rejecting liability for injuries caused by fright due to the negligent setting of a fire which threatened plaintiff's dwelling; Miller v. Railroad Co., 78 Ohio St. 309, 85 N. E. 499, 18 L. R. A. (N. S.) 949, 125 Am. St. Rep. 699, denying damages for fright and shock caused by witnessing defendant's derailed street car collide with plaintiff's dwelling.

cal invasion of the person. Stutz v. C. &. N. W. Ry. Co., 73 Wis. 147, 40 N. W. 653, 9 Am. St. Rep. 769; Pankopf v. Hinkley, 141 Wis. 146, 123 N. W. 625, 24 L. R. A. (N. S.) 1159. And see Miller v. Railroad Co., supra, 78 Ohio St., at page 324, 85 N. E. 499, 18 L. R. A. (N. S.) 949, 125 Am. St. Rep. 699. But the rule is well established that when a defendant's negligence causes physical injury to the plaintiff's person, damages resulting from incidental fright may be recovered. Traction Co. v. Lambertson, 59 N. J. Law, 297, 36 Atl. 100; Warren v. Boston & Maine R. R. Co., 163 Mass. 484, 40 N. E. 895; Denver & R. G. R. R. Co. v. Roller (C. C. A. 9) 100 Fed. 738, 41 C. C. A. 22, 49 L. R. A. 77; and see Pankopf v. Hinkley, supra.

[4, 5] There was testimony tending to show that plaintiff received actual physical injuries continuing to a greater or less extent up to the time of the trial (which was about a year and one-half after the accident) and tending to show more or less permanent impairment of health, particularly by way of a general nervous condition, manifested by halting and stammering speech, impaired ability to sleep, and loss of flesh. Defendant's testimony tended to show that plaintiff was not seriously injured, and that at least before the trial he had entirely recovered from the results of the accident; and if there was testimony reasonably tending to show that plaintiff received not even a temporary physical injury, the refusal of defendant's request would present important and perhaps serious questions.[3] But we think the testimony was such that the jury could not, without perverseness, fail to find that plaintiff received some physical injury as the result of the accident. There was express and uncontroverted testimony that plaintiff, after a long flight through the air, either alighted upon his hands and knees upon the brick pavement, or, as expressed by one of defendant's witnesses, alighted upon his feet and "went down on" one of his knees; that one of his hands was more or less bruised and cut; that he was helped up from the ground, either immediately following the fall, or after he had gone a short distance and lain down, and was assisted, weeping, into a factory near the crossing. It was undisputed (unless by the testimony of defendant's conductor, to the effect that while in the factory, immediately following the accident, in reply to the conductor's inquiry whether he was injured plaintiff said, "No, I am not hurt") that for a time at least one of plaintiff's knees was lame and that for a time he was unable to do his usual labor. Whether he jumped from the wagon just before the collision, or was thrown by the impact of the engine, is not important, for the testimony, in its aspect most favorable to defendant, makes it clear that plaintiff left the wagon but a few seconds, at the most, before the collision and because collision was immediately impending. Even if the sole physical injury resulted from an attempt to escape from actual danger, damages are recoverable for impairment of health occasioned by the consequent fright. Traction Co. v. Lambertson, supra, 59 N. J. Law, at page 302, 36 Atl. 100; Bu-

---

[3] In the charge to the jury no mention is made of the subject of fright or damage therefrom. The elements of damage referred to were only compensation for past and future pain and suffering, and for past and future impairment of earning capacity.

chanan v. West New Jersey R. R. Co., 52 N. J. Law, 265, 19 Atl. 254; Armour & Co. v. Kollmeyer (C. C. A. 8) 161 Fed. 78, 88 C. C. A. 242, 16 L. R. A. (N. S.) 1110. In fact, had plaintiff not jumped, serious (perhaps fatal) injury was inevitable. Indeed, plaintiff could scarcely either have jumped or been thrown the distance stated, alighting as he did, without more or less immediate shock (perhaps only temporary) to his physical and nervous system. In the Lambertson Case, supra, it was held that an actual injury was done to the plaintiff personally, entitling to recovery for damages for fright, where the wagon in which he was riding was, while crossing a railroad track, struck by defendant's car and carried along by it for some distance before it was stopped. In the Warren Case, supra, the wagon in which plaintiff was riding, while caught between gates under conditions similar to those existing here, was struck by the train and plaintiff was thrown or jumped out. It was said (163 Mass. p. 487, 40 N. E. 896):

"It is a physical injury to the person to be thrown out of a wagon, or to be compelled to jump out, even although the harm done consists mainly of nervous shock."

In Pankopf v. Hinkley, supra, recovery was permitted for severe fright or shock (resulting in miscarriage) due to the fact that an automobile was negligently steered into the horses attached to the carriage in which plaintiff was riding, whereby the carriage was pulled with such force and violence as to cause the fright and shock referred to.

[6] The rule permitting recovery for fright does not require that the direct physical injuries be permanent or severe. We think it plain that plaintiff had, under the evidence, and regardless of the fright, a right of action entitling him to some degree of recovery, provided, as the jury must have found, defendant was negligent and plaintiff free from negligence with respect to the accident. It is elementary that it is not error to refuse an instruction, although correctly stating an abstract proposition of law, if inapplicable to the facts of the case. We think the requested instruction was inapplicable. In the Warren and Roller Cases, supra, refusals of requests similar to that under consideration here were held not error.

We find no error in the respects complained of, and the judgment of the District Court is affirmed.