BOSTON v. CHESAPEAKE AND OHIO RAILWAY COMPANY.

[No. 17,276. Filed December 28, 1944. Rehearing denied
January 29, 1945. Transfer Granted May 1, 1945.]

*George P. Ryan* and *Ross, McCord, Ice & Miller,* all
of Indianapolis, and *Clarence Benadum,* of Muncie, for
appellant.

*Albert H. Cole,* of Peru, and *Warner, Clark & Warner,*
of Muncie, for appellee.

[Since a transfer was granted to the Supreme Court,
this case is published without syllabus. For opinion of
the Supreme Court, see 223 Ind. —, 61 N. E. (2d) 326.]

ROYSE, J.—Appellant brought this action against
appellee to recover damages for injuries sustained as a
result of appellee's alleged negligence. The cause was
tried to a jury and resulted in a directed verdict in favor
of appellee. The error relied on here is the overruling
of appellant's motion for a new trial. The specifications
in the motion for a new trial were: (1) The verdict of
the jury is contrary to law; (2) The court erred in
peremptorily instructing the jury to return a verdict for
appellee.

Appellant contends that the uncontradicted evidence
established every essential element necessary to support
his right to recover, and the trial court erred in directing
a verdict on the theory that the nervous shock suffered

by appellant was unaccompanied by a sufficient physical injury. Appellee asserts the action of the trial court was correct because, it is claimed, the theory of appellant's complaint is that he seeks to recover damages for fear and shock; that the complaint does not allege and the evidence does not disclose appellant suffered any physical injury in the collision.

The complaint, in substance, alleges appellee operated certain railroad trains and equipment in and around Muncie, Indiana; that certain of its tracks crossed North Brady Street in said City; that at said crossing said street runs north and south and said tracks east and west; that on November 8, 1940, about 9:30 P. M., appellant was driving north on Brady Street at a speed of seven or eight miles per hour and was attempting to cross appellee's tracks; that before entering upon said crossing appellant looked both ways and listened for any warnings of approaching trains, and hearing no warnings and seeing no train approaching he started across said crossing. When on the northernmost track appellant was suddenly struck by appellee's railroad cars being back up in a westerly direction; that said collision was caused by the following negligent, illegal and reckless acts of appellee:

"(a)   The defendant, while backing up the railroad cars *which struck this plaintiff* at the time and place aforesaid, negligently failed to have, and failed to display, any light of any nature or character to warn this plaintiff, who was lawfully using said highway, of the approach of its train.

"(b)   The defendant, while backing up said railroad cars *which struck the plaintiff* at the time and place aforesaid, negligently failed to ring any bell or give any audible warning to the plaintiff, who was lawfully using said highway.

"(c) The defendant operated its cars within a residential and thickly populated district at the unreasonable and negligent speed of between thirty and thirty-five miles per hour.

"(d) The defendant, while approaching said crossing, negligently and illegally failed to blow the whistle on said train three times beginning ninety yards from the crossing, and failed to ring the bell continuously from said time until said train was across the crossing.

"(e) The defendant failed to have any look-out at the time and place aforesaid to observe the track in the direction in which said railroad cars were proceeding." (Our emphasis.)

That as a result of said acts of negligence the cars of appellee backed against the automobile in which appellant was riding, and said train continued to move in a westerly direction, dragging appellant's automobile with appellant inside thereof for a distance of 150 feet; that during the time this dragging continued the train kept grinding its way into the automobile, and by reason of this appellant became rigid with fear and believed he would be mashed to death in said automobile. Thereafter, appellant was so affected from shock he could not sleep, and shortly thereafter collapsed at his work. He was unable to stand up or eat or drink; that the condition of shock has continued and is permanent; that because of nervousness accompanying said shock, appellant has developed ulcers of the stomach which will permanently injure and weaken his stomach.

The theory of appellant's complaint was negligence. *Chicago, Terre Haute and Southeastern Railway Company* v. *Collins* (1924), 82 Ind. App. 41, 142 N. E. 634, 143 N. E. 712; *McGary* v. *Stephen* (1937), 103 Ind. App. 285, 7 N. E. (2d) 542; *Chicago & Erie Railroad Company* v. *Monesmith et al.* (1942), 110 Ind. App. 281, 37

N. E. (2d) 724. Appellee did not seek to require appellant to make his complaint more specific nor did it demur to the complaint. Our statute in reference to the contents of a complaint (§ 2-1004, Burns' 1933) merely requires that it contain a statement of the facts constituting the cause of action in plain, concise language, without repetition, in such manner as to enable a person of common understanding to know what is intended. In the instant case the complaint specifically alleges appellant was struck by appellee's cars, and sets out five acts of negligence which it is averred resulted in the injuries complained of. We are of the opinion the complaint states a cause of action.

It is admitted there was sufficient evidence to submit to the jury the question of whether or not there was negligence on the part of appellee. Therefore, the principal question to be determined in this case is: Does the evidence show that appellant's injuries were caused solely by fear and shock without physical injury? The evidence in the record on this point discloses that as appellant was going across the track there was a sudden crash and the railroad cars hit him; that the coupling on the back of the train pushed through the door of the car and threw appellant over against it and then back to the other side of the automobile. He was bounced around like a rubber ball in the automobile, his head striking the top of the car. His automobile was dragged down the track for a distance of about 100 feet. He stated that at the time of the collision he was seized with a great fear he would be crushed to death. He was stunned and dazed, and that since the accident he has been unable to sleep, is highly nervous and morose, is cross and irritable with his family; that he has developed a lameness in the left leg and has lost his sense of balance and does not have proper control of his

hands and body. Prior to the accident appellant always enjoyed good health. There was medical testimony to the effect that appellant was suffering from a traumatic neurosis which was described as a shock coming from injury, and in the opinion of these medical witnesses these injuries were caused by the accident.

Indiana is one of the jurisdictions adhering to the rule that mental suffering and nervous shock cannot be made the basis of an action for damages where there is no physical injury. *Boden* v. *Del-Mar Garage, Incorporated* (1933), 205 Ind. 59, 67, 185 N. E. 860, 862, and authorities there cited. This rule has been frequently criticized by the text writers and the courts. In jurisdictions which follow the rule, it has been generally strictly limited to actions where there was no physical battery. The late Mr. Justice Holmes, while Chief Justice of the Supreme Court of Massachusetts, speaking for that Court in the case of *Homans* v. *Boston Elevated Railway Co.* (1902), 180 Mass. 456, 62 N. E. 737, 57 L. R. A. 291, 91 Am. St. Rep. 324, referring to this rule, said:

> "As has been explained repeatedly, it is an arbitrary exception, based upon a notion of what is practicable, that prevents a recovery for visible illness resulting from nervous shock alone. *Spade* v. *Railroad Co.*, 168 Mass. 285, 288, 47 N. E. 88, 38 L. R. A. 512, 60 Am. St. Rep. 393; *Smith* v. *Cable Co.*, 174 Mass. 576, 55 N. E. 380, 47 L. R. A. 323, 75 Am. St. Rep. 374. But when there has been a battery and the nervous shock results from the same wrongful management as the battery, it is at least equally impracticable to go further and to inquire whether the shock comes through the battery or along with it."

In the case of *John M. Comstock, Exr., etc. of Ella M. Comstock, Deceased, Respt.,* v. *Helen M. Wilson, Appt.*

(1931), 257 N. Y. 231, 177 N. E. 431, 76 A. L. R. 676, the facts were as follows:

"Plaintiff's automobile, in which the plaintiff's testatrix was a passenger, came into collision with an automobile operated by the defendant. The collision caused some noise or 'grating sound.' The left fender of plaintiff's car was loosened from the running board. The plaintiff's testatrix stepped from the automobile and started to write down the defendant's name and license number. While doing so, she fainted and fell to the sidewalk, fracturing her skull. All this occurred within a few minutes after the accident. She lived about twenty minutes after the fall. The plaintiff, claiming that the death of his testatrix was the result of defendant's negligence, has recovered judgment for $5,000 against her.

"The trial judge submitted to the jury, as a question of fact, whether the alleged negligence of the defendant was the proximate cause of the death of plaintiff's testatrix. He refused the defendant's request to charge that, 'if the Jury find that the deceased at the time of the collision sustained only shock or fright, without physical injury, they must find for the defendant.' "

This action of the trial court was the only question presented. The New York Court of Appeals, speaking through Judge Lehman, after reviewing numerous decisions of the New York and Massachusetts courts on this subject, said:

"Whether there can be a recovery for the consequences of fright caused by unintentional want of care depends in the first place upon the question whether a legal right of the plaintiff has been invaded by the defendant's negligence. . . . Serious consequences from mere mental disturbance unaccompanied by physical shock cannot be anticipated, and no person is bound to be alert to avert a danger that foresight does not disclose. The conclusion is fortified by the practical consideration that, where there has been no physical contact, there is

danger that fictitious claims may be fabricated. Therefore, where no wrong was claimed other than a mental disturbance, the courts refused to sanction a recovery for the consequences of that disturbance. Here there was more. The defendant should have foreseen that a collision with the car in which plaintiff's testatrix was a passenger would cause injury to the passengers. She did collide with the car through lack of care, and she did cause injury to the plaintiff's testatrix. That injury was not confined to fright. The fright was only a link in the chain of causation between collision and fractured skull. The collision itself, the consequent jar to the passengers in the car, was a battery and an invasion of their legal right. Their cause of action is complete when they suffered consequent damages."

In the case of *Pennsylvania Co.* v. *White* (C. C. A. 6, 1917), 242 Fed. 437, it was held:

"It is a physical injury to the person to be thrown out of a wagon, or to be compelled to jump out, even although the harm done consists mainly of nervous shock."

In the case of *Consolidated Traction Co.* v. *Lambertson* (1896), 59 N. J. L. 297, 36 A. 100, the court said:

"The additional contention in his case is that it was error to permit the jury to award him damages for any injuries suffered by him from the collision, because, as is urged, his injury was not the result of any physical impact upon his person, but was solely the result of fright, and the consequent mental shock. But this is obviously a misconception of the facts proved. He was in the wagon which was struck by the car going at great speed, and was carried along by the car for some distance before it was stopped. There was, therefore, an actual injury done to his person, and the cases cited on the argument, to the effect that an injury produced by mere fright cannot be recovered for, are inapplicable."

In speaking of the degree of physical injury which is necessary before a person may obtain damages for mental suffering or shock, the Supreme Court of Massachusetts, in the case of *Kisiel* v. *Holyoke Street Railway Co.* (1921), 240 Mass. 29, 132 N. E. 622, said:

"Such physical injury need not be indicated upon the surface of the body by bruises or otherwise. It may be caused by a fall when by reason of fright one faints. It may be slight, so far as the physical injury is concerned."

The only cases in this state to which our attention has been called where this rule has been discussed are: *Boden* v. *Del-Mar Garage, Incorporated, supra; Kagy* v. *Western Union Telegraph Company* (1906), 37 Ind. App. 73, 76 N. E. 792; *The Cleveland, Cincinnati, Chicago and St. Louis Railway Company* v. *Stewart* (1900), 24 Ind. App. 374, 56 N. E. 917; *Kalen* v. *Terre Haute and Indianapolis Railroad Company* (1897), 18 Ind. App. 202, 47 N. E. 694. In each of these cases the question presented on appeal related to the ruling of the trial court on demurrer. Each is clearly distinguishable from the case here under consideration. In none of them were there any allegations of any physical injury to the plaintiff. In this case the complaint specifically avers that appellant was struck by appellee's train.

In most of the jurisdictions denying damages for mental anguish, fright and shock, where there is no physical injury, it is held that where there is a battery of the plaintiff the question of whether there is a causal connection between the physical injury and the shock is one of fact to be determined by the jury. This is the effect of the case of *Davis* v. *Cleveland Railway Co.* (1939), 135 Oh. St. 401, 21 N. E. (2d) 169, relied upon by appellee. We are in accord with this rule. In

the instant case we are of the opinion there was sufficient evidence to submit the question to the jury.

The judgment of the Delaware Circuit Court is reversed with instructions to sustain appellant's motion for a new trial.

NOTE.—Reported in 58 N. E. (2d) 366.